RPR & ASSOCIATES, INC., a South Carolina Corporation, Plaintiff v. THE UNIVERSITY OF NORTH CAROLINA-CHAPEL HILL and THE NORTH CAROLINA DEPARTMENT OF ADMINISTRATION, Defendants

No. COA01-1146

(Filed 15 October 2002)

**1. Appeal and Error—jurisdiction after appeal—continuing trial court proceedings**

The trial court did not err by continuing to exercise jurisdiction after notice of appeal in a construction contract case where defendant asserted sovereign immunity. Although the trial court has no jurisdiction over a case after perfection of an appeal, the trial court has the authority to determine whether or not its order affects a substantial right or is otherwise immediately appealable.

**2. Interest— construction claims—breach of contract rather than unpaid balance**

The trial court erred by awarding prejudgment and postjudgment interest on a construction contract with a state university where plaintiff's recovery was based on damages incurred from defendant's breaches of contract and warranty rather than from

an unpaid balance due under the contract and N.C.G.S.
§ 143-134.1 was inapplicable.

### 3. Construction Claims—damages for rock excavation—sufficiency of evidence

There was sufficient evidence to support the trial court's
award of damages for direct costs for additional rock excavation
on a construction claim where a civil engineer testified extensively regarding plaintiff's damages and the trial court's findings
accurately and properly reflected that testimony.

### 4. Construction Claims—delays—evidence

The trial court did not err in its award of damages for delay
by defendant under a construction contract where defendant
contended that the trial court had neglected to deduct from the
total the time extensions granted for a series of change orders as
well as time awarded by the State Office of Construction. The
expert testimony before the court included the time extensions,
and defendant had refused to pay any portion of the State Office
of Construction award.

### 5. Construction Claims—masonry damages—evidence of cause rather than extent

The trial court did not err in a construction contract action by
concluding that plaintiff had presented insufficient evidence of
specific damages for additional costs for masonry work where
the denial of the claim was based on plaintiff's failure to present
sufficient evidence as to how much of the additional expense was
caused by defendant's conduct rather than the extent of such
damages.

### 6. Construction Claims—excessive punchlist—findings on evidence

The trial court erred in a construction claim in its findings
about damages from an excessive punchlist where the court
awarded damages for costs incurred for additional labor by subcontractors but made no findings based on plaintiff's direct costs,
about which plaintiff submitted substantial evidence.

### 7. Construction Claims—offset—settlement with architect

The trial court did not err in a construction claim by allowing
an offset against a judgment for monies plaintiff had received in
a settlement with the architect of the project.

Appeal by plaintiff and defendant University of North Carolina at Chapel Hill from judgment entered 1 May 2000 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 11 June 2002.

*Brian E. Upchurch for plaintiff appellant-appellee.*

*Attorney General Roy Cooper, by Special Deputy Attorney General Thomas J. Ziko, for defendant appellant-appellee.*

TIMMONS-GOODSON, Judge.

RPR & Associates, Inc. ("plaintiff") and the University of North Carolina at Chapel Hill ("defendant") appeal from judgment in favor of plaintiff for breach of contract by defendant. For the reasons set forth herein, we affirm in part and reverse in part the judgment of the trial court.

The procedural and factual history of this appeal is a lengthy one: On 15 January 1998, plaintiff filed a complaint in Wake County Superior Court against defendant, the State of North Carolina ("the State"), and the North Carolina Department of Administration ("the DOA"). The complaint alleged that plaintiff, a South Carolina corporation, entered into a contract with the State, by and through defendant and the DOA, for the purpose of constructing the George Watts Hill Alumni Center ("Alumni Center"), located on the campus of the University of North Carolina at Chapel Hill. The complaint set forth claims for breaches of contract and of warranty.

All three defendants thereafter filed motions to dismiss plaintiff's complaint pursuant to Rules 12(b)(1), (2), (4), (5) and (6) of the North Carolina Rules of Civil Procedure. After a hearing on the motions, the trial court entered an order granting the State's motion to dismiss pursuant to Rule 12(b)(5) for insufficient service of process. The trial court denied, however, the motions to dismiss filed by defendant and the DOA, which denials defendant and the DOA appealed to this Court on 12 August 1998.

Despite the appeal filed by defendant and the DOA, plaintiff continued to pursue its claims in the superior court. Defendant and the DOA resisted such proceedings, contending that their notice of appeal removed jurisdiction from the trial court pending resolution of the appeal. Plaintiff rejoined that, as the orders from which defendant and the DOA appealed were interlocutory and nonappeal-

able, the notice of appeal did not deprive the trial court of jurisdiction or otherwise stay proceedings at the trial level.

On 8 September 1998, the trial court denied defendant's motion to stay proceedings pending resolution of the appeal. Defendant thereafter filed a petition for writs of certiorari and supersedeas with the Court of Appeals, and moved for a temporary stay of the trial court proceedings. Although this Court initially granted defendant's motion for a temporary stay, it dissolved the stay on 23 September 1998. The Court also denied defendant's petition for writ of supersedeas and dismissed the petition for writ of certiorari. On 30 September 1998, this Court denied a second motion filed by defendant for a temporary stay.

Defendant then filed petitions for writ of supersedeas and writ of certiorari with the Supreme Court, which petitions were denied. By order dated 12 October 1998, the Supreme Court also denied defendant's motion for temporary stay of the judgment of the Court of Appeals. On 15 October 1998, the Court of Appeals denied defendant's petition for writ of prohibition.

Defendant moved the trial court once more for a stay of proceedings, which motion was heard on 3 May 1999. Upon reviewing the repeated denials of defendant's motions by the appellate courts, as well as the 8 September 1998 order by the trial court denying a stay of proceedings, the trial court once again denied defendant's motion to stay proceedings. On 2 June 1999, the Court of Appeals denied further petitions by defendant for writ of supersedeas and prohibition.

On 6 October 1999, this Court heard the appeal by defendant and the DOA from the trial court's denial of their motions to dismiss plaintiff's complaint. See RPR & Assocs. v. State, 139 N.C. App. 525, 534 S.E.2d 247 (2000), affirmed per curiam, 353 N.C. 362, 543 S.E.2d 480 (2001) (hereinafter "RPR I"). The first issue addressed by the RPR I Court was the interlocutory nature of the appeal. The Court concluded that, because the motion to dismiss was based in part on the doctrine of sovereign immunity, the denial of such motion affected a substantial right, thus rendering the decision of the trial court immediately appealable. See id. at 527, 534 S.E.2d at 250. Having determined that the appeal was properly before the Court, the Court proceeded to address the substantive issues of the case. Concluding that plaintiff had complied with all applicable statutory procedures, the Court held that defendant had waived its claim to

sovereign immunity from suit by entering into the contract with plaintiff. The Court thus held that the trial court properly denied defendant's motion to dismiss. The Court filed its opinion on 15 August 2000.

On 22 November 1999 and 21 February 2000, after defendant's appeal had been heard in this Court, but before a decision had been filed, the merits of plaintiff's case came before the trial court. The parties presented evidence for more than two weeks, upon the conclusion of which the trial court entered a judgment one hundred and twenty pages in length. In its judgment, filed 1 May 2000, the trial court concluded that defendant had breached its contract with plaintiff, causing substantial monetary injury. The trial court assessed such damages against defendant as $851,058.38, with interest accrued in the amount of $748,931.37. It is from this judgment that defendant and plaintiff now appeal.

---

Defendant presents three issues on appeal, arguing that the trial court erred by (1) continuing to assert jurisdiction over the case after defendant filed its notice of appeal; (2) assessing interest in the judgment against defendant; and (3) awarding excessive monetary damages. Plaintiff also argues three issues on appeal, contending that the trial court erred in (1) failing to award damages on its "masonry" claim; (2) failing to award damages based on plaintiff's "excessive punchlist" claim; and (3) failing to make findings regarding an offset against the judgment granted to defendant. We first examine defendant's assignments of error.

### I. Defendant's Appeal

Defendant argues that the trial court erred by (1) exercising jurisdiction over the case; (2) awarding interest; and (3) awarding damages in amounts unsupported by the evidence. We address these issues in turn.

### A. Functus Officio

[1] By its first assignment of error, defendant argues that the trial court had no jurisdiction over the case after defendant perfected its appeal, and that therefore, the trial court erred in entering judgment against defendant.

As a general rule, once a party gives notice of appeal, such appeal divests the trial court of its jurisdiction, and the trial judge becomes *functus officio. See Bowen v. Motor Co.*, 292 N.C. 633, 635, 234 S.E.2d

RPR & ASSOCS. v. UNIVERSITY OF N.C.-CHAPEL HILL

[153 N.C. App. 342 (2002)]

748, 749 (1977); *Sink v. Easter*, 288 N.C. 183, 197, 217 S.E.2d 532, 541 (1975). *Functus officio*, which translates from Latin as "having performed his of her office," is defined as being "without further authority or legal competence because the duties and functions of the original commission have been fully accomplished." *Black's Law Dictionary* 682 (7th ed. 1999). Thus, when a court is *functus officio*, it has completed its duties pending the decision of the appellate court. The principle of *functus officio* stems from the general rule that two courts cannot ordinarily have jurisdiction of the same case at the same time. *See Wiggins v. Bunch*, 280 N.C. 106, 110, 184 S.E.2d 879, 881 (1971).

It follows from the principle of *functus officio* that if a party appeals an immediately appealable interlocutory order, the trial court has no authority, pending the appeal, to proceed with the trial of the matter. *See Patrick v. Hurdle*, 7 N.C. App. 44, 45-46, 171 S.E.2d 58, 59 (1969). Where a party appeals from a *non*appealable interlocutory order, however, such appeal does not deprive the trial court of jurisdiction, and thus the court may properly proceed with the case. *See Veazey v. Durham*, 231 N.C. 357, 364, 57 S.E.2d 377, 382-83 (1950); *T & T Development Co. v. Southern Nat. Bank of S.C.*, 125 N.C. App. 600, 603, 481 S.E.2d 347, 349, *disc. review denied*, 346 N.C. 185, 486 S.E.2d 219 (1997). "[A] litigant cannot deprive the trial court of jurisdiction to determine a case on its merits by appealing from a nonappealable interlocutory order of the trial court." *Velez v. Dick Keffer Pontiac-GMC Truck, Inc.*, 144 N.C. App. 589, 591, 551 S.E.2d 873, 875 (2001).

An interlocutory order is immediately appealable if such order affects a substantial right of the parties involved. *See* N.C. Gen. Stat. §§ 1-277(a), 7A-27(d) (2001). A right is substantial when it will clearly be lost or irremediably and adversely affected if the order is not reviewed before final judgment. *See Cagle v. Teachy*, 111 N.C. App. 244, 246, 431 S.E.2d 801, 802 (1993).

> Admittedly the 'substantial right' test for appealability of interlocutory orders is more easily stated than applied. It is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered.

*Waters v. Personnel, Inc.*, 294 N.C. 200, 208, 240 S.E.2d 338, 343 (1978); *see also Cagle*, 111 N.C. App. at 246, 431 S.E.2d at 802 (noting that there are "[n]o hard and fast rules . . . for determining which

appeals affect a substantial right"). The trial court has the authority, however, to determine whether or not its order affects a substantial right of the parties or is otherwise immediately appealable. *See Utilities Comm. v. Edmisten, Attorney General*, 291 N.C. 361, 365, 230 S.E.2d 671, 674 (1976); *Veazey*, 231 N.C. at 364, 57 S.E.2d at 382-83; *T & T Development Co.*, 125 N.C. App. at 603, 481 S.E.2d at 349; *Benfield v. Benfield*, 89 N.C. App. 415, 420, 366 S.E.2d 500, 503 (1988). Pursuant to Appellate Rule 8, a party may apply to the appellate courts for a stay when the trial court chooses to proceed with the matter. *See* N.C.R. App. P. 8 (2002).

In the instant case, defendant appealed from the trial court's order denying defendant's motion to dismiss. Defendant argues that this order was immediately appealable because it affected a substantial right. The substantial right at issue was based on the doctrine of sovereign immunity which, defendant asserted, barred plaintiff's suit. Defendant contends that, as the order was immediately appealable, the trial court had no jurisdiction over the case once defendant perfected its appeal.

Although this Court eventually held that defendant's appeal affected a substantial right, and was thus immediately appealable, such a holding was not a foregone conclusion. The Court noted in its opinion that the "Supreme Court has never specifically addressed the issue." *RPR & Assocs.*, 139 N.C. App. at 527, 534 S.E.2d at 250. There is moreover substantial authority for the proposition that, once the State enters into a contract, it waives its rights to sovereign immunity. *See, e.g.*, N.C. Gen. Stat. § 143-135.3 (2001); *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976); *Stahl-Rider v. State*, 48 N.C. App. 380, 384, 269 S.E.2d 217, 219 (1980). As noted *supra*, the trial court had the authority to determine whether or not its order was immediately appealable. *See Veazey*, 231 N.C. at 364, 57 S.E.2d at 382-83; *T & T Development Co.*, 125 N.C. App. at 603, 481 S.E.2d at 349. Given the fact that plaintiff's claim against defendant was based upon a contract, the trial court's decision that defendant had waived all claims to sovereign immunity, and that therefore the appeal did not affect defendant's substantial rights, was a reasonable one. The reasonableness of the trial court's decision to proceed with trial is underscored by the fact that both this Court and the Supreme Court repeatedly rejected defendant's attempts to stay the lower court proceedings or otherwise remove jurisdiction from the trial court. Defendant does not contend that the proceeding before the trial court was otherwise flawed or resulted in prejudice to defendant.

**RPR & ASSOCS. v. UNIVERSITY OF N.C.-CHAPEL HILL**

[153 N.C. App. 342 (2002)]

Because the trial court had the authority to determine whether its order affected defendant's substantial rights or was otherwise immediately appealable, the trial court did not err in continuing to exercise jurisdiction over this case after defendant filed its notice of appeal. The trial court's determination that the order was nonappealable was reasonable in light of established precedent and the repeated denials by the appellate courts of this State to stay proceedings. Although this Court ultimately held that defendant's appeal affected a substantial right, it also held that defendant was not immune to suit. Defendant states no grounds, nor has it produced any evidence to demonstrate how it was prejudiced by the trial court's exercise of jurisdiction over this case. We therefore overrule defendant's first assignment of error.

### B. Prejudgment and Postjudgment Interest

[2] By its second assignment of error, defendant contends that the trial court erred when it included prejudgment and postjudgment interest in the award entered for plaintiff. Citing the well-established rule that interest is not recoverable against the State absent express authorization by a statute or contract, *see, e.g., Faulkenbury v. Teachers' and State Employees' Ret. Sys.*, 132 N.C. App. 137, 149, 510 S.E.2d 675, 683, *disc. review denied*, 350 N.C. 379, 536 S.E.2d 620, *cert. denied*, 352 N.C. 102, 540 S.E.2d 358 (1999), defendant argues that the award of interest was improper and must be reversed. On this point, we agree with defendant.

In its award to plaintiff, the trial court ordered that

(2) G.S. 143-134.1, which is incorporated in Article 17 of the general conditions of this contract governs the issue of interest. Interest accrues at the rate of one percent (1%) beginning on the 46th day after substantial completion as to all monies due and unpaid a contractor. RPR completed its work on November 16, 1992 and is entitled to interest on sums awarded by this court to run from January 1, 1993 until paid. Therefore, RPR is entitled to prejudgment interest at the contract and the statutory rate (1% per month) from January 1, 1993 which has accrued in the amount of $748,931.37 as of May 1, 2000.

(3) Interest on the principal sum from and after the date of this judgment at the contract and statutory rate of 1% per month.

As noted in the trial court's order, the parties agreed in their contract that "payments to subcontractors shall be made in accordance with

the provisions of G.S. 143-134.1 entitled *Interest on final payments due to prime contractors: payments to subcontractors.*" Section 143-134.1 of the North Carolina General Statutes provides in pertinent part that:

> On all public construction contracts which are let by a board or governing body of the State government or any political subdivision thereof . . . the **balance due** prime contractors shall be paid in full within 45 days after respective prime contracts of the project have been accepted by the owner, certified by the architect, engineer or designer to be completed in accordance with terms of the plans and specifications, or occupied by the owner and used for the purpose for which the project was constructed, whichever occurs first. Provided, however, that whenever the architect or consulting engineer in charge of the project determines that delay in completion of the project in accordance with terms of the plans and specifications is the fault of the contractor, the project may be occupied and used for the purposes for which it was constructed without payment of any interest on **amounts withheld past the 45 day limit.** . . . Should **final payment** to any prime contractor beyond the date such contracts have been certified to be completed by the designer or architect, accepted by the owner, or occupied by the owner and used for the purposes for which the project was constructed, be delayed by more than 45 days, said prime contractor shall be paid interest, beginning on the 46th day, at the rate of one percent (1%) per month or fraction thereof unless a lower rate is agreed upon on such **unpaid balance** as may be due.

N.C. Gen. Stat. § 143-134.1(a) (2001) (emphasis added). Under the plain terms of section 143-134.1, a prime contractor may recover interest of one percent on any unpaid balance due under a public construction contract beginning on the forty-sixth day after such balance was due.

In the instant case, plaintiff filed suit against defendant for breach of contract and for breach of warranty. Plaintiff did not allege, however, nor did the trial court find, that defendant failed to pay plaintiff the amount due under the contract for completion of the construction project. Instead, plaintiff asserted that defendant's conduct rendered performance of the contract more difficult, resulting in unforeseen extra-contractual expense and damages to plaintiff. The trial court agreed, finding and concluding that defendant's breach of contract injured plaintiff in the amount of $851,058.38 in damages.

The trial court then ordered that plaintiff was "entitled to interest on sums awarded by this court." Such a conclusion was in error.

The case of *Davidson and Jones, Inc. v. N.C. Dept. of Administration*, 69 N.C. App. 563, 317 S.E.2d 718 (1984), *reversed in part on other grounds*, 315 N.C. 144, 337 S.E.2d 463 (1985), is strikingly similar to the facts of the instant case and instructive on the issue of interest awarded against the State on damages for a breach of contract action. In *Davidson*, the plaintiff-contractor entered into a contract with the defendants, the University of North Carolina at Chapel Hill ("UNC-CH") and the North Carolina Department of Administration, "for the construction by plaintiff of new stacks for books for the Wilson Library on the [UNC-CH] campus." *Id.* at 564, 317 S.E.2d at 719. During the course of construction, the plaintiff incurred unforeseen expenses for rock excavation and removal. After the plaintiff's request for additional compensation was rejected by the defendants, the plaintiff "filed claims for equitable adjustment, requesting '$262,551.00 for the extra costs, duration expenses, inefficiency and interest costs' allegedly incurred because of the overrun in rock excavation." *Id.* at 567, 317 S.E.2d at 721. The trial court agreed with the plaintiff, concluding that it "was 'entitled to recover from the State as an equitable adjustment under the Contract.' " *Id.* at 569, 317 S.E.2d at 722. The trial court also ruled that the plaintiff was entitled to interest on such recovery.

On appeal, this Court held that, although the trial court correctly awarded damages to the plaintiff for expenses it incurred as a result of the rock excavation, the plaintiff was not entitled to interest on such damages. *See id.* at 574-75, 317 S.E.2d at 725. In so holding, the Court specifically rejected section 143-134.1 as a basis for awarding interest. *See id.* at 575, 317 S.E.2d at 725. Noting that it was unaware of "any statute authorizing the recovery of any interest against the State on breach of contract on the facts of this case[,]" the Court reversed the award of interest by the trial court.

As did the *Davidson* Court, we conclude that "on the face of its textual language[,]" section 143-134.1 is inapplicable to the facts of the instant case. *Id.* at 575, 317 S.E.2d at 725. Plaintiff's recovery was based on damages it incurred as a result of defendant's breaches of contract and of warranty, and not for any "unpaid balance" due under the contract. As noted *supra*, "the State is not required to pay interest on its obligations unless it is required to do so by contract or by statute." *Faulkenbury*, 132 N.C. App. at 149, 510 S.E.2d at 683. Because defendant was not obligated under the contract or section

143-134.1 to pay interest on damages suffered by plaintiff as a result of defendant's breach of contract, the trial court erred in awarding prejudgment and postjudgment interest. We therefore reverse the trial court's award of interest against defendant and turn to defendant's third assignment of error.

## C. Sufficiency of Evidence

**[3]** By its final assignment of error, defendant argues that the trial court erred in awarding excessive damages to plaintiff. Defendant contends that there was insufficient evidence to support the award by the trial court. We disagree.

Upon review of judgment by the trial court, we must determine whether there was competent evidence before the court to support its findings of fact, and whether those findings of fact, in turn, support its conclusions of law. *See Lemmerman v. Williams Oil Co.*, 318 N.C. 577, 580-81, 350 S.E.2d 83, 86 (1986). "On appeal, the findings of fact made below are binding on the Court of Appeals if supported by the evidence, even when there may be evidence to the contrary." *Barnhardt v. City of Kannapolis*, 116 N.C. App. 215, 217, 447 S.E.2d 471, 473, *disc. review denied*, 338 N.C. 514, 452 S.E.2d 807 (1994).

Defendant first contends that there was insufficient evidence to support the trial court's award of direct costs of $86,214.12 for damages plaintiff incurred under its rock excavation claim. Defendant asserts that plaintiff submitted a damage claim for rock excavation totaling only $82,961.62. Our review of the transcript in this case reveals that defendant's argument is without merit.

James E. Anderson ("Anderson"), a civil engineer, testified extensively regarding plaintiff's damages on the rock excavation claim. Anderson testified that plaintiff suffered damages amounting to $2,214.03 for "additional open rock excavation[,]" $1,038.47 for "additional utility trench rock excavation[,]" and $82,961.62 for "additional footings trench rock excavation[,]" the total of which is $86,214.12. Thus, the figure of $82,961.62 represented only a portion of plaintiff's claim, rather than the entire figure as defendant asserted. The trial court's findings accurately and properly reflect Anderson's testimony. Because there was substantial evidence to support the trial court's findings, we conclude that the trial court properly found that plaintiff's damages for rock excavation totaled $86,214.12.

**[4]** Defendant next argues that the finding by the trial court that plaintiff suffered damages totaling $138,800.00 due to a delay on the

project of 347 days is unsupported by the evidence. Defendant asserts that the trial court neglected to deduct from its total of 347 days a time extension of forty-eight days granted to plaintiff by a series of change orders, as well as a time period of eighty days previously awarded to plaintiff by the State Office of Construction. We disagree.

Plaintiff presented extensive evidence at trial on the cause and effect of construction delay. Mr. William W. Gurry ("Gurry"), an expert in the analysis of construction delay and critical path methodology of construction scheduling, testified in detail concerning the construction delays caused by defendant. Gurry testified that, according to his calculations, the project "was 391 days late beyond contract completion[,]" a figure which "include[d] a 44 day time extension." Thus, contrary to defendant's assertions, the evidence before the trial court, and the trial court's findings concerning the delay, took into account the time extensions granted to plaintiff. Moreover, the trial court explicitly recognized that the State Office of Construction had previously awarded plaintiff damages, but found that defendant "refused to pay any portion of that award of the State Office of Construction." The trial court therefore included these time extensions in its award. We conclude that the trial court's award to plaintiff of damages suffered due to delay of the project is supported by the evidence and does not constitute a double recovery for plaintiff. We therefore overrule defendant's final assignment of error. We now examine the issues presented by plaintiff on appeal.

## II. Plaintiff's Appeal

Plaintiff assigns as error three issues on appeal, arguing that the trial court erred in failing to award plaintiff damages on its (1) "masonry" claim and (2) its "excessive punchlist" claim. Plaintiff also asserts that the trial court erred by (3) making no findings regarding its conclusion that an offset against the judgment was proper for sums paid to plaintiff in settlement of a lawsuit against the project architect.

In addressing plaintiff's claims, we note again the proper standard of review for this Court. Findings of fact made by the trial court are binding if supported by competent evidence, see Barnhardt, 116 N.C. App. at 217, 447 S.E.2d at 473, while we review de novo the trial court's conclusions of law. See Lemmerman, 318 N.C. at 581, 350 S.E.2d at 86.

## A. Masonry Claim

**[5]** Plaintiff asserts that the trial court erred in concluding that plaintiff had presented insufficient evidence of the specific damages it incurred in connection with the masonry phase of construction. In its judgment, the trial court found that

> RPR's budget for the masonry work, including materials and subcontract labor to install the masonry and appurtenances, was $669,064.00, which is found to be reasonable. RPR's actual cost for this work was $1,280,268.00. RPR's budget amount is found to be reasonable. RPR has been unable to prove to the court by the greater weight of the evidence how much of this additional masonry expense which was actually incurred by RPR was due to the conduct of UNC. Some, but not all of these additional costs, likely arose out of estimating errors. Although it is clear on this masonry claim that RPR suffered damages through owner caused inefficiencies, the amount of such actual damages has not been proven with the degree of specificity required by law. Therefore, the court rules that the Plaintiff cannot receive any monetary recovery for this claim.

Plaintiff argues that the trial court's failure to award damages on its masonry claim arises from the trial court's misapprehension of the law concerning speculative damages. Plaintiff correctly notes that, " 'where the plaintiff can prove the fact of damage, but not the extent of it, the reasonable certainty rule as it is now applied in most courts does not require proof of damages with mathematical precision.' " *Bolton Corp. v. T.A. Loving Co.*, 94 N.C. App. 392, 405, 380 S.E.2d 796, 805 (1989) (quoting Dobbs, *Remedies* § 3.3 (1973)), *disc. review denied*, 325 N.C. 545, 385 S.E.2d 496 (1989). Plaintiff contends that it produced sufficient evidence to support an award for damages on the masonry claim, and that the trial court erred in failing to make such an award. We disagree.

Contrary to plaintiff's assertions, it is clear that the trial court's denial of its masonry claim was based on plaintiff's failure to present sufficient evidence as to the *cause* of the damages rather than the *extent* of such damages. As recited above, the trial court found that

> RPR has been unable to prove to the court by the greater weight of the evidence how much of this additional masonry expense which was actually incurred by RPR was due to the conduct of UNC. Some, but not all of these additional costs, likely arose out of estimating errors.

It is well established that, for breach of an executory contract, the plaintiff has the burden of presenting sufficient evidence of damages "as can be ascertained and measured with reasonable certainty." *Biemann & Rowell Co. v. Donohoe Cos.*, 147 N.C. App. 239, 245, 556 S.E.2d 1, 5 (2001). "Moreover, where both parties contribute to the delay, neither can recover damages, unless there is proof of clear apportionment of the delay and expense attributable to each party." *Id.* In the instant case, the trial court found that plaintiff had failed to sustain its burden on the issue of apportionment of damages on the masonry claim and declined to award any monetary damages for such. The trial court's findings were based on competent evidence, and we conclude that the trial court did not err in failing to award damages for plaintiff's masonry claim. *See Biemann*, 147 N.C. App. at 246, 556 S.E.2d at 6 (holding that the trial court did not err in failing to award the plaintiff damages for its construction claim where the plaintiff "failed to properly establish responsibility for its additional costs"). We therefore overrule this assignment of error.

### B. Excessive Punchlist Claim

**[6]** Plaintiff further assigns error to the trial court's failure to award plaintiff damages for the direct expenses it incurred on its "excessive punchlist" claim. After reviewing the evidence connected with this claim, the trial court found that "[a]s a direct and proximate result of the unreasonable means and methods employed by UNC in performing pre-final and final inspections and of the imposition of excessively high standards on RPR's finished work, RPR incurred . . . additional costs[.]" Although the trial court awarded plaintiff damages for costs it incurred in connection with additional labor by subcontractors, the trial court made no findings and no award based on plaintiff's direct costs, for which plaintiff submitted substantial evidence. Plaintiff argues that the trial court's failure to make findings regarding the direct costs constitutes error. We agree.

"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon . . . ." N.C. Gen. Stat. § 1A-1, Rule 52(a)(1) (2001). Our Supreme Court has noted that

> while Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require *specific findings* of the ultimate facts established by the

evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.

*Quick v. Quick*, 305 N.C. 446, 452, 290 S.E.2d 653, 658 (1982) (alteration in original). Such specific findings are necessary for appropriate appellate review. *See Mann Contr'rs, Inc. v. Flair With Goldsmith Consultants-II, Inc.*, 135 N.C. App. 772, 775, 522 S.E.2d 118, 121 (1999) (holding that the trial court's award of damages was not supported by the findings).

In the instant case, plaintiff submitted substantial evidence of the direct costs it incurred as a result of defendant's unreasonable behavior in its inspection of plaintiff's work. Specifically, plaintiff produced evidence of costs totaling $38,221.00 in "clean up expense[;]" $273,334.00 in "additional payroll" expense; and $264.00 in "travel expenses." Further, Anderson testified at trial that plaintiff incurred $311,000.00 in "direct costs" as a result of defendant's behavior in connection with this claim. Although the trial court found that, "[a]s a result of the unreasonable and excessive punchlist process, RPR was required to expend an extraordinary sum of money for punchlist work above and beyond that reasonably anticipated and included in RPR's bid" and awarded costs related to subcontractor expenses, the trial court made no findings in connection with the direct costs expended by plaintiff. As a result, we are unable to determine whether or not the trial court properly considered the evidence of plaintiff's direct costs. We therefore remand the case for additional findings of fact regarding this evidence. We now examine plaintiff's final assignment of error.

### C. Offset

[7] By its final assignment of error, plaintiff argues that the trial court erred in allowing an offset against monies plaintiff received from a settlement of claims against the architect on the project. In its judgment, the trial court ordered that

UNC shall receive a credit to be applied to this judgment for monies received by Plaintiff resulting from the settlement of similar claims made by RPR in a separate lawsuit against the Architect, O'Brien/Atkins Associates, P.A. in the amount of $200,000.00, plus interest at one percent per month (1%) running from the date of such settlement payment to RPR.

Plaintiff contends that the trial court erred in ordering the credit without making findings of fact and conclusions of law regarding the necessity of this offset. We disagree.

In a breach of contract action, a defendant is entitled to produce evidence of payment of compensation by a third party to a plaintiff for damages resulting from a similar claim regarding the same subject matter. *See Markham v. Nationwide Mut. Fire Ins. Co.*, 125 N.C. App. 443, 455, 481 S.E.2d 349, 357, *disc. review denied*, 346 N.C. 281, 487 S.E.2d 551 (1997).

> Simply put, although plaintiff is entitled to full recovery for its damages, plaintiff is nevertheless not entitled to "double recovery" for the same loss or injury. As stated by our Supreme Court, "any amount paid by anybody . . . for and on account of any injury or damage should be held for a credit on the total recovery . . . ."

*Id.* (quoting *Holland v. Utilities Co.*, 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935)) (citations omitted).

In the case at bar, plaintiff asserted that it incurred expenses as a result of delay of the project caused by "the State of North Carolina through its agent architect." Plaintiff conceded that it had sued the architect over such delay and had settled its case for the amount of $200,000.00. Thus, in bringing the present breach of contract action, plaintiff sought compensation for injuries for which it had already in part received some monies. In its judgment, the trial court found that plaintiff was entitled to expenses it incurred as a result of the project delay. It is clear that defendant was entitled to a reduction of damages for monies plaintiff received for identical injuries resulting from an identical delay. *See Ryals v. Hall-Lane Moving and Storage Co.*, 122 N.C. App. 134, 141-42, 468 S.E.2d 69, 74-75 (1996). Because the facts regarding the settlement were not in dispute, and because defendant was entitled to the credit as a matter of law, the trial court was not required to make findings regarding the offset. We therefore overrule plaintiff's final assignment of error.

In conclusion, we hold that the trial court did not err by continuing to exercise jurisdiction over this case after defendant perfected its appeal. We further hold that the trial court erred when it awarded prejudgment and postjudgment interest against defendant, and by neglecting to make findings of fact concerning the evidence of direct costs plaintiff incurred in connection with its "excessive punchlist" claim. We otherwise affirm the judgment of the trial court.

The judgment of the trial court is hereby

Affirmed in part, reversed in part, and remanded.

Judges GREENE and HUNTER concur.