ALAN CAPPS, Plaintiff,
v.
NW SIGN INDUSTRIES OF NORTH CAROLINA, INC., a North Carolina Corporation, RONALD BRODIE, and CHRIS REEDEL, Defendants.
No. COA06-1297
Court of Appeals of North Carolina.
Filed August 21, 2007
This case not for publication
James, McElroy & Diehl, P.A., by Richard B. Fennell and Jared E. Gardner, for the plaintiff-appellee.
Vandeventer Black LLP, by David P. Ferrell and Norman W. Shearin, Jr., for the defendants-appellants.
JACKSON, Judge.
NW Sign Industries of North Carolina, Inc. ("NW Sign of N.C."), Ronald Brodie ("Brodie") and Chris Reedel ("Reedel") (collectively, "defendants") appeal from an order filed 20 February 2006. For the following reasons, we affirm the trial court's order.
The facts of this case, stated in greater detail in this Court's earlier opinion, see Capps v. NW Sign Indus. of N.C., Inc., 171 N.C. App. 409, 411.12, 614 S.E.2d 552, 554.55 (2005), vacated, 360 N.C. 391, 627 S.E.2d 614 (2006) (per curiam), show that Brodie is President and CEO of NW Sign Industries, Inc. ("NW Sign of N.J."), a New Jersey Corporation that is not a party to this suit, and that Reedel is Vice President of NW Sign of N.J. and General Manager of NW Sign of N.C. Alan Capps ("plaintiff") was employed as a salesperson by NW Sign of N.J. from December 2000 until November 2002. Plaintiff began working for NW Sign of N.J. in December 2000, and in January 2001, he worked for NW Sign of N.C. and was added to the NW Sign of N.C. payroll. According to plaintiff, NW Sign of N.C. terminated his employment in November 2002 in order to avoid paying him his commission due.
On 20 June 2003, plaintiff brought suit against defendants, alleging a violation of the North Carolina Wage and Hour Act, wrongful discharge, and breach of contract. Plaintiff later added a claim for punitive damages. On 19 November 2003, defendants filed: (1) an answer; (2) counterclaims for breach of contract and violation of a covenant not to compete; (3) a motion for judgment on the pleadings; and (4) a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of Civil Procedure, based upon the existence of a forum-selection and arbitration clause in plaintiff's employment contract. By order entered 18 February 2004, the trial court denied defendants' motion for judgment on the pleadings and motion to dismiss.
On 24 February 2004, the trial court ordered the parties to engage in a mediated settlement conference , and on 16 June 2004, defendants filed notice of appeal from the trial court's 18 February 2004 order. Thereafter, on 24 August 2004, the trialcourt filed a consent order staying the trial court proceedings pending a decision by this Court.
On 5 July 2005, this Court dismissed defendants' appeal on the grounds that the trial court's order was interlocutory and did not affect a substantial right. See Capps, 171 N.C. App. at 411, 614 S.E.2d at 554. Dissenting in Capps, Judge Wynn stated that although "a denial of a motion to dismiss is an interlocutory order and thus not ordinarily appealable . . ., if the issue pertains to the application of a forum-selection clause, our courts have held that a defendant may nevertheless immediately appeal the order because the order affects a substantial right." Id. at 412, 614 S.E.2d at 555 (Wynn, J., dissenting) (citingHickox v. R&G Group Int'l, Inc., 161 N.C. App. 510, 511.12, 588 S.E.2d 566, 567.68 (2003),Mark Group Int'l, Inc. v. Still, 151 N.C. App. 565, 566 n.1, 566 S.E.2d 160, 161 (2002), and Cox v. Dine-A-Mate, Inc., 129 N.C. App. 773, 776, 501 S.E.2d 353, 355 (1998)).
After this Court issued its opinion, plaintiff pressed to obtain outstanding discovery, prompting defendants to file a motion to stay dated 26 August 2005 in the trial court. On 15 September 2005, defendants also filed a petition for writ of supersedeas and a motion for temporary stay with the Supreme Court. On 16 September 2005, the Supreme Court denied defendants' petition and motion , and defendants withdrew their motion for stay filed in the trial court. Trial court proceedings resumed that day, with the trial court's ordering the parties to complete mediation no later than 7 February 2006. On 26 January 2006, the parties participated in a mediated settlement conference. The parties, however, offer differing accounts of the events during and after the mediation. Defendants allege that the mediator expressed to them that the "teeth" of the confidentiality agreement  i.e., that the settlement payments would be made over a period of time and would be contingent upon plaintiff's keeping the settlement confidential _ would be negotiated in a settlement agreement that would follow the mediation. At the close of the mediation, the parties signed a Memorandum of Agreement ("the memorandum"), a five-sentence memorandum of key terms , but defendants, in signing this memorandum and given their previous conversation with the mediator, contend that they did not believe the memorandum to be the complete and final settlement agreement between the parties. The mediator asked the parties to draft a settlement agreement , which defendant expected would be negotiated and would include a confidentiality clause "with teeth." Defendants' attorney drafted a detailed settlement agreement and e-mailed the draft to plaintiff's attorney. Plaintiff's attorney suggested revisions, deleted some of defendants' attorney's proposed provisions, and added additional paragraphs , and the attorneys continued corresponding via e-mail through the afternoon of 7 February 2006.
In contrast, plaintiff contends that the parties completely settled the case at the 26 January 2006 mediation. The memorandum included the statement that "[t]he parties agree that the terms of this Settlement are confidential," and all parties signed this document. Plaintiff argues that the defendants' attorney's proposed settlement agreement that was emailed to plaintiff's attorney contained multiple, material terms that were not agreed to or contemplated during mediation, and plaintiff's attorney rejected the new terms the same morning he received the email . On 8 February 2006, plaintiff filed a motion to enforce the mediated settlement agreement as written and notified defendant that a hearing on the motion would be held within twenty-four hours. Following the hearing, the trial court entered an order on 20 February 2006 allowing plaintiff's motion to enforce the mediated settlement agreement. Thereafter, defendants filed a motion to amend the judgment , which the trial court denied on 14 March 2006.
On 7 April 2006, our Supreme Court issued a per curiam opinion vacating this Court's opinion in Capps filed on 5 July 2005:
For the reasons stated in the dissent, the decision of the Court of Appeals is vacated, and the case is remanded with direction to the Court of Appeals to further remand to the Superior Court of Mecklenburg County for findings of fact sufficient for appellate review of the jurisdictional issue.
Capps, 360 N.C. at 392, 627 S.E.2d at 614. Subsequently, the trial court complied with the Supreme Court's directive by entering additional findings of fact and conclusions on the jurisdictional issue. In the interim, however, defendants filed notice of appeal on 12 April 2006 from the trial court's 20 February 2006 order enforcing the mediated settlement agreement.
In their first argument, defendants contend that the trial court lacked jurisdiction to enter the 20 February 2006 order enforcing the terms of the mediated settlement agreement. We disagree.
In North Carolina, "[a]s a general rule, once a party gives notice of appeal, such appeal divests the trial court of its jurisdiction." RPR & Assocs. v. Univ. of N. Carolina-Chapel Hill (RPR II), 153 N.C. App. 342, 346, 570 S.E.2d 510, 513 (2002),disc. rev. denied and cert. dismissed, 357 N.C. 166, 579 S.E.2d 882 (2003). This result is obtained either through application of the common law doctrine of functus officio or the automatic stay pursuant to North Carolina General Statutes, section 1-294. "Functus officio, which translates from Latin as `having performed his or her office,' is defined as being `without further authority or legal competence because the duties and functions of the original commission have been fully accomplished.'" Id. at 347, 570 S.E.2d at 513 (quoting Black's Law Dictionary 682 (7th ed. 1999)). Section 1-294, in turn, provides that "[w]hen an appeal is perfected as provided by this Article it stays all further proceedings in the court below upon the judgment appealed from, or upon the matter embraced therein." N.C. Gen. Stat. . 1-294 (2005).
Pursuant to either the doctrine offunctus officio or section 1-294, a trial court's continued jurisdiction following notice of appeal from an interlocutory order depends upon the nature of the interlocutory order  namely, whether or not the order was immediately appealable. See RPR II, 153 N.C. App. at 347, 570 S.E.2d at 514. As this Court has noted,
if a party appeals an immediately appealable interlocutory order, the trial court has no authority, pending the appeal, to proceed with the trial of the matter. Where a party appeals from a nonappealable interlocutory order, however, such appeal does not deprive the trial court of jurisdiction, and thus the court may properly proceed with the case.
Id. (emphasis in original) (internal citation omitted). An interlocutory order that affects a substantial right i.e., a right that "will clearly be lost or irremediably and adversely affected if the order is not reviewed before final judgment"  is immediately appealable. Id. Such a determination, however, must be made on a case-by-case basis, and "there are `no hard and fast rules . . . for determining which appeals affect a substantial right.'" Id. at 347.48, 570 S.E.2d at 514 (quoting Cagle v. Teachy, 111 N.C. App. 244, 246, 431 S.E.2d 801, 802 (1993)). "The trial court has the authority . . . to determine whether or not its order affects a substantial right of the parties or is otherwise immediately appealable . . . [and] a party may apply to the appellate courts for a stay when the trial court chooses to proceed with the matter." Id. at 348, 570 S.E.2d at 514 (internal citations omitted).
In RPR & Assocs. v. Univ. of N. Carolina-Chapel Hill (RPR II), this Court was presented with a scenario in which the appealability of an interlocutory order  a motion to dismiss based upon the doctrine of sovereign immunity  was uncertain. See id. We noted that "[a]lthough this Court eventually held that defendant's appeal affected a substantial right, and was thus immediately appealable, such a holding was not a foregone conclusion." Id. This Court previously had held that such an order was immediately appealable.See RPR & Assocs. v. Univ. of N. Carolina-Chapel Hill (RPR I), 139 N.C. App. 525, 527, 534 S.E.2d 247, 250 (2000) (citing Anderson v. Town of Andrews, 127 N.C. App. 599, 601, 492 S.E.2d 385, 386 (1997), andFaulkenbury v. Teachers' & State Employees' Retirement Sys., 108 N.C. App. 357, 365, 424 S.E.2d 420, 423, aff'd, 335 N.C. 158, 436 S.E.2d 821 (1993) (per curiam)), aff'd, 353 N.C. 362, 543 S.E.2d 480 (2001) (per curiam). However, the Supreme Court had not yet ruled upon the issue. See RPR II, 153 N.C. App. at 348, 570 S.E.2d at 514 (citing RPR I, 139 N.C. App. at 527, 534 S.E.2d at 250). Additionally, "both this Court and the Supreme Court repeatedly rejected defendant's attempts to stay the lower court proceedings or otherwise remove jurisdiction." Id. at 348, 570 S.E.2d at 514.15. Further, we noted that "the trial court had the authority to determine whether or not its order was immediately appealable." Id. at 348, 570 S.E.2d at 514 (citing Veazey v. Durham, 231 N.C. 357, 364, 57 S.E.2d 377, 382.83, reh'g denied, 232 N.C. 744, 59 S.E.2d 429 (1950), and T & T Dev. Co. v. S. Nat'l Bank of S.C., 125 N.C. App. 600, 603, 481 S.E.2d 347, 349, disc. rev. denied, 346 N.C. 185, 486 S.E.2d 219 (1997)). Finally, this Court in RPR II noted that the defendant had failed "to demonstrate how it was prejudiced by the trial court's exercise of jurisdiction over this case." Id. at 349, 570 S.E.2d at 515. Ultimately, this Court held that the trial court's determination that it retained jurisdiction was reasonable:
Because the trial court had the authority to determine whether its order affected defendant's substantial rights or was otherwise immediately appealable, the trialcourt did not err in continuing to exercise jurisdiction over this case after defendant filed its notice of appeal. The trial court's determination that the order was non appealable was reasonable in light of established precedent and the repeated denials by the appellate courts of this State to stay proceedings.
Id.
The pertinent facts related to jurisdiction in the case sub judice are indistinguishable from the situation in RPR II. In the instant case, defendants filed notice of appeal on 16 June 2004 from the trial court's denial of their motion to dismiss based, inter alia, upon a forum-selection clause. Much as with the motion to dismiss based upon sovereign immunity in RPR II, the motion to dismiss based upon a forum-selection clause was interlocutory. See Capps, 171 N.C. App. at 411, 614 S.E.2d at 554 ("Here, the trial court's denial of defendants' motion to dismiss is interlocutory . . . ."); id. at 412, 614 S.E.2d at 555 (Wynn, J., dissenting) ("The majority correctly notes that a denial of a motion to dismiss is an interlocutory order and thus not ordinarily appealable."). However, the appealability of that interlocutory order was uncertain. On 5 July 2005, this Court dismissed defendants' appeal as an interlocutory order not affecting a substantial right, and Judge Wynn dissented on the grounds that "our caselaw holds that the denial of a motion to dismiss based on an alleged forum-selection clause is immediately appealable." Id. at 412, 614 S.E.2d at 555 (Wynn, J., dissenting). Although, as Judge Wynn noted, this Court had held such motions affect a substantial right, see id. at 412.13, 614 S.E.2d at 555 (Wynn, J., dissenting) (citing R&G GroupInt'l, 161 N.C. App. at 511.12, 588 S.E.2d at 567.68, Mark Group Int'l, 151 N.C. App. at 566 n.1, 566 S.E.2d at 161, andDine-A-Mate, 129 N.C. App. at 776, 501 S.E.2d at 355), "the `Supreme Court ha[d] never specifically addressed the issue.'" RPR II, 153 N.C. App. at 348, 570 S.E.2d at 514 (quotingRPR I, 139 N.C. App. at 527, 534 S.E.2d at 250).[1]
Following this Court's dismissal of defendants' appeal, defendants appealed to our Supreme Court and filed a petition for writ of supersedeas and a motion for temporary stay with the Supreme Court. After the Supreme Court denied the petition and motion on 16 September 2005,see Capps, 360 N.C. 61, 620 S.E.2d 678, the trial court proceedings resumed, and the parties completed mediation on 26 January 2006. On 20 February 2006, the trial court entered an order enforcing the settlement, and on 14 March 2006, the trial court denied defendants' motion to amend the judgment.
On 7 April 2006, the Supreme Court vacated this Court's decision in Capps "[f]or the reasons stated in the dissent." See Capps, 360 N.C. at 392, 627 S.E.2d at 614. However, that decision is not dispositive of whether or not the trial court acted reasonably in continuing to exercise jurisdiction over the proceedings. See RPR II, 153 N.C. App. at 348, 570 S.E.2d at 514 ("Although this Court eventually held that defendant's appeal affected a substantial right, and was thus immediately appealable, such a holding was not a foregone conclusion."). Instead, the relevant factors include, inter alia: (1) our Supreme Court had not yet determined whether a motion to dismiss based upon a forum-selection clause was immediately appealable, and thus, the Supreme Court's eventual "holding was not a foregone conclusion,"id.; (2) our Supreme Court denied both defendants' petition for writ of supersedeas and their motion for temporary stay following this Court's decision, see id. (noting that "the Supreme Court . . . rejected defendant's attempts to stay the lower court proceedings."); (3) the trial court did not resume with the proceedings until after this Court held that the order was not immediately appealable and after our Supreme Court denied both the petition for writ of supersedeas and the motion for temporary stay; and (4) defendants cannot demonstrate prejudice, because the trial court entered an order, prior to defendants' notice of appeal, compelling the parties to mediate their dispute, and the parties voluntarily settled their agreement through the resulting mediation.
We hold that, pursuant to RPR II, the trial court properly retained jurisdiction in the instant case.See In re Civil Penalty, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court."). Therefore, we hold that the trial court possessed jurisdiction to enter its 20 February 2006 order enforcing the settlement, and accordingly, defendants' assignment of error is overruled.
In their second argument, defendants contend that the trial court erred by granting a hearing on plaintiff's motion to enforce the settlement agreement with less than twenty-four hours notice to defendants. We disagree.
It is well-settled that "'[a] party waives notice of a motion by attending the hearing of the motion and by participating in the hearing without objecting to the improper notice or requesting a continuance for additional time to produce evidence.'" Nicholson v. Jackson County Sch. Bd., 170 N.C. App. 650, 654, 614 S.E.2d 319, 322 (2005) (quoting Anderson v. Anderson, 145 N.C. App. 453, 456, 550 S.E.2d 266, 269 (2001)); see also In re J.S., 165 N.C. App. 509, 514, 598 S.E.2d 658, 662 (2004) (citing Anderson, 145 N.C. App. at 456, 550 S.E.2d at 269). Here, defense counsel (1) received notice of the hearing on plaintiff's motion; (2) attended the hearing; (3) participated in the hearing without objection; (4) submitted two affidavits for the trial court's consideration of the matter; (5) did not request a continuance at any time; and (6) "did not request an opportunity to submit further affidavits when the Court took the motion under advisement at the conclusion of the hearing." Accordingly, defendants waived any objections regarding the adequacy of the notice of the hearing, and therefore, defendants' assignment of error is overruled. In their final argument, defendants contend that the trial court erred in enforcing the memorandum as the complete and final settlement agreement between the parties. We disagree.
"A settlement agreement is interpreted according to general principles of contract law, and since contract interpretation is a question of law, the standard of review on appeal is de novo." Cabarrus County v. Systel Bus. Equip. Co., 171 N.C. App. 423, 425, 614 S.E.2d 596, 597, disc. rev. denied, 360 N.C. 61, 621 S.E.2d 177 (2005). A settlement agreement "is formed when parties assent to the same thing in the same sense, and their minds meet as to all terms." Smith v. Young Moving & Storage, Inc., 167 N.C. App. 487, 493, 606 S.E.2d 173, 177 (2004) (internal quotation marks and citations omitted). As this Court has noted,
[t]he intention of the parties to a contract must be determined from the language of the contract, the purpose and subject matter of the contract, and the situation of the parties at the time the contract was executed. When the language of the contract is clear and unambiguous, construction of the agreement is a matter of law for the court, and the court cannot look beyond the terms of the contract to determine the intentions of the parties.
Asheville Mall, Inc. v. F.W. Woolworth Co., 76 N.C. App. 130, 132, 331 S.E.2d 772, 773.74 (1985) (internal citations omitted).
In the case sub judice, following their mediation on 26 January 2006, the parties signed the following memorandum:
1. [Defendants] agree to offer and . . . [plaintiff] agrees to accept the sum of $124,000 in full and final settlement of all claims;
2. The parties agree that they shall execute mutual dismissal of all claims against each other and counsel for the parties shall withdraw any existing appeals;
3. The parties agree that the terms of this settlement are confidential and the parties further agree that if asked they will represent that this matter was resolved to the mutual satisfaction of all parties; and
4. The parties shall bear their own costs.
Defendants contend that this memorandum was not the final settlement agreement between the parties but merely "a bare bones outline of terms . . . to be included in the final settlement agreement." This contention is without merit.
As our Supreme Court has explained,
where . . . parties have deliberately put their engagements in writing in such terms as import a legal obligation free of uncertainty, it is presumed the writing was intended by the parties to represent all their engagements as to the elements dealt with in the writing. Accordingly, all prior and contemporaneous negotiations in respect to those elements are deemed merged in the written agreement.
Neal v. Marrone, 239 N.C. 73, 77, 79 S.E.2d 239, 242 (1953). As such, it is well-settled that
"[t]he legal effect of a final instrument which defines and declares the intentions and rights of the parties cannot be modified or corrected by proof of any preliminary negotiations or agreement, nor is it permissible to show how the parties understood the transaction in order to explain or qualify what is in the final writing, in the absence of an allegation of fraud or mistake orunless the terms of the instrument itself are ambiguous and require explanation."
Root v. Allstate Ins. Co., 272 N.C. 580, 587, 158 S.E.2d 829, 835 (1968) (emphasis in original) (quoting Orion Knitting Mills v. U.S. Fid. & Guar. Co., 137 N.C. 565, 569, 50 S.E. 304, 305 (1905)). Although defendants in the case sub judice have not alleged fraud or mistake, they contend that the memorandum is ambiguous. Specifically, defendants argue that the memorandum "does not read like a complete and final settlement agreement" because the memorandum is only five sentences long and
does not contain any schedule of payment, does not state whether the contemplated settlement proceeds are to be paid in a lump sum or over time, does not state when the payment is due, does not state where or how the payment is to be made, does not provide for full releases of the parties, their agents, successors and assigns, . . . does not contain any enforcement mechanism for the summary language that does exist . . . about confidentiality of the settlement . . .[,] [and] does not provide for disclosure of the amount of the settlement to the parties' accountants, CPAs and other professionals that will need the settlement amount to prepare the parties' taxes and provide other financial services.
Contrary to defendants' contention, however, the absence of such terms does not render the memorandum ambiguous. This Court has upheld a settlement agreement where terms, such as those addressed by defendants, have been omitted from the written settlement. See, e.g., Lemly v. Colvard Oil Co., 157 N.C. App. 99, 577 S.E.2d 712 (2003). Further, with respect to the manner and timing of settlement payments under the memorandum, this Court has held that settlement agreements need not specify payment due dates, and "where no date for payment is specified in the contract, the courts will presume a reasonable time." Sockwell & Assocs., Inc. v. Sykes Enters., Inc., 127 N.C. App. 139, 142, 487 S.E.2d 795, 797 (1997). In the instant case, the trial court ordered defendants to make the $124,000.00 settlement payment to plaintiff within thirty days, and we need not determine whether this deadline was reasonable as defendants have not assigned error to this portion of the trial court's order. See N.C. R. App. P. 10(a) (2006). Finally, notwithstanding defendants' emphasis on the brevity of the memorandum as support for their contention that the memorandum is ambiguous, the mere length of the memorandum does not preclude the document from constituting a contract. See, e.g., Lemly, 157 N.C. App. 99, 577 S.E.2d 712 (upholding a similar, handwritten, four-item memorandum as a valid and enforceable settlement agreement).
Although defendants were not entitled to offer parol evidence under the basic parol evidence rule, our Courts have carved out several exceptions to the rule, including "showing mode of payment and discharge as contemplated by the parties, other than that specified in the instrument." Jefferson Standard Life Ins. Co. v. Morehead, 209 N.C. 174, 176, 183 S.E. 606, 607 (1936). Therefore, defendants may have been permitted to introduce evidence that did not contradict or vary the terms of the memorandum but merely explained the mode of payment of the settlement i.e., periodic payments contingent upon plaintiff's keeping the settlement confidential as opposed to a lump sum.
In their effort to explain their understanding of the mode of payment, defendants contend that at the mediation, they discussed with the mediator the necessity of a confidentiality agreement "with teeth"  i.e., a provision in the settlement agreement whereby the settlement would be paid over time, with the payments dependent upon plaintiff's keeping the settlement confidential. Defendants further allege that the mediator expressed to defendants' attorney "that the teeth of the confidentiality agreement would be negotiated in the settlement agreement that would follow the mediation." However, it is incumbent upon defendants, as appellants, to present a complete record to this Court,see Fortis Corp. v. Ne. Forest Prods., 68 N.C. App. 752, 753, 315 S.E.2d 537, 538 (1984), and there is no evidence in the record on appeal of any such statement by the mediator or any other evidence presented to the trial court supporting defendants' allegation. Indeed, neither the mediator's affidavit nor defendants' counsel's affidavit  both signed on 8 February 2006  makes any mention of such a statement by the mediator to defendants' attorney. Although defendants' attorney stated at the hearing on plaintiff's motion to enforce the mediated settlement agreement that "the mediator point blank told us, that's something that we could negotiated [sic] in the settlement agreement," it is well-settled that "[s]tatements by an attorney are not considered evidence." In re D.L., 166 N.C. App. 574, 582, 603 S.E.2d 376, 382 (2004) (citing State v. Haislip, 79 N.C. App. 656, 658, 339 S.E.2d 832, 834 (1986)). Accordingly, defendants failed to present any competent evidence to the trial court to support their version of the settlement payment schedule.
In sum, the memorandum constitutes a valid and enforceable settlement agreement, and the trial court did not err in entering an order enforcing the memorandum as a valid and enforceable settlement agreement. Accordingly, defendants' assignment of error is overruled.
Defendants' assignments of error not argued in their brief are deemed abandoned. See N.C. R. App. P. 28(b)(6) (2006).
Affirmed.
Chief Judge MARTIN and McGEE concur.
Report per Rule 30(e).
NOTES
[1] Although the Supreme Court had denied review of Dine-A-Mate, 129 N.C. App. 773, 501 S.E.2d 353, it is well-established that the denial of discretionary review "does not mean that . . . [the Supreme] Court has determined that the decision of the Court of Appeals is correct." Peaseley v. Va. Iron, Coal & Coke Co., 282 N.C. 585, 592, 194 S.E.2d 133, 139 (1973).