SOCKWELL & ASSOCIATES, INC., Plaintiff v. SYKES ENTERPRISES INCORPORATED, Defendant

COA96-1149

(Filed 5 August 1997)

**1. Trial § 571 (NCI4th)— breach of contract—setting aside verdict—misapprehension of law—reversible error**

In an action for breach of contract, the trial court committed reversible error by setting aside a jury verdict, on its own motion, in favor of plaintiff pursuant to Rule 59(a)(9) where the trial court based its decision on a misapprehension of law that, when a contract does not specifically set forth dates that payments are to be due, then it is impossible to determine when a breach, if any, has occurred. In this case ample evidence was presented from which the jury could have determined that a breach had occurred. N.C.G.S. § 1A-1, Rule 59(a)(9).

**2. Judgments § 652 (NCI4th)— prejudgment interest—breach of contract—date of breach**

The trial court erred in awarding prejudgment interest of ten days prior to the jury's verdict in a breach of contract case where there was no evidence in the record to support the court's award and there was evidence presented at trial from which the court could have selected a date of breach.

Appeal by plaintiff from order entered 20 May 1996 by Judge Marvin K. Gray in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 May 1997.

*Robinson, Bradshaw & Hinson, P.A., by John R. Wester; and The Bishop Law Firm, by J. Daniel Bishop, for plaintiff appellant.*

*Helms, Cannon, Hamel & Henderson, by Christian R. Troy, for defendant appellee.*

COZORT, Judge.

Plaintiff Sockwell and Associates (Sockwell) won a jury verdict of $23,342.15 on its breach of contract claim against defendant Sykes Enterprises Incorporated (SEI). After plaintiff requested prejudgment interest, the trial court set aside the jury's verdict and ordered a new trial. Plaintiff appeals. We reverse.

The facts underlying plaintiff's breach of contract action are as follows. Sockwell is a firm that identifies and recruits executives for businesses. SEI retained Sockwell to search for a new director of marketing for SEI. The parties executed a written contract on 14 January 1994. The contract provided

> Our professional fee for conducting each search is 33-1/3% of the first year's total expected cash compensation for the position including cash incentives and signing bonuses. Based on the information you have shared with us, we believe the successful candidate's total cash compensation in year one will be at least $100,000. Thus, our projected fee will be $33,000, billed in three monthly installments of $11,000 each. If the successful candidate's compensation package differs from this estimate, an adjustment will be made in the fee, either up or down, at the conclusion of the search.

> \* \* \* \*

> While we hope it will not be necessary, our clients have the right to cancel the search at any time. Cancellation is effective upon our receipt of your written notice.

> If the engagement is canceled, your obligation for payment includes all expenses incurred and professional services rendered before notice is received. Regarding fees for professional services, if the engagement is canceled more than ninety (90) days after the contract approval date, your obligation is for the entire professional fee. Otherwise, your obligation is for a percentage of the professional fee determined by dividing active

search days (contract approval date through cancellation date) by ninety (90) days.

After execution of the contract, Sockwell began working on finding candidates for SEI. The contract provided that the president of SEI would meet with the candidates at the end of March 1994. At some point, Sockwell learned that the president would be unavailable at the end of March so Sockwell made arrangements for the first candidate to meet earlier than that date with SEI's president. However, SEI was not interested in the candidate and decided not to meet with him. By this time, Sockwell had issued two invoices to SEI: the first at the end of January 1994, and the second at the end of February 1994. These bills were never paid. Ed Sockwell, president of Sockwell, testified that the total out of pocket expenses of Sockwell on the SEI matter was $1,342.15. On 9 May 1994 based on lack of communication from SEI, Sockwell cancelled its search for SEI's marketing director.

On 25 August 1994, Sockwell initiated this action for breach of contract. Prior to trial, the parties stipulated that they had formed a "valid and binding contract" and that the "fee to be paid to Sockwell & Associates under the contract was not contingent upon the successful placement of a director of marketing." At trial, both parties offered evidence. During cross-examination, the president of SEI testified he knew when he signed the contract that SEI was to be billed in monthly installments.

At the charge conference the parties agreed that the issues to be submitted to the jury were

1. Did the Defendant, Sykes Enterprises Incorporated, breach the contract with Sockwell & Associates?

2. What amount of damages is the Plaintiff entitled to recover?

Defendant requested an instruction on justification to go along with the instruction on prevention. The court properly instructed on both doctrines. On 8 May 1996, the jury returned a verdict finding that defendants breached the contract and that plaintiff was entitled to damages of $23,342.15. After the jury was excused, the only issue the parties raised was the timing of prejudgment interest. The trial court directed plaintiff to prepare the judgment and allowed plaintiff only ten days' prejudgment interest. At no time did defendant make a motion to set aside the verdict or for a new trial. Subsequently plaintiff wrote the trial court and requested reconsideration of the

prejudgment interest. On 13 May 1996, pursuant to N.C. Gen. Stat. § 1A-1, Rule 59(d) (1990), the court on its own motion set aside the verdict and ordered a new trial. The court stated, "it's very suspect as to when payments were to be made, and consequently, some impossibility as to when the breach occurred, if that occurred. And, for that reason, and in the interest of justice, the Court . . . is setting aside the verdict. . . ." The court cited Rule 59(a)(9) as its basis for setting aside the verdict. Rule 59(a)(9) provides that a trial court may set aside a verdict for "[a]ny other reason heretofore recognized as grounds for new trial."

**[1]** Plaintiff appeals, contending the trial court erred by setting aside the verdict. We agree. Generally a trial court's decision to set aside a verdict and order a new trial will not be reversed by this Court unless we find an abuse of discretion. *Bryant v. Nationwide Insurance Co.*, 313 N.C. 362, 318, 329 S.E.2d 333, 344 (1985). However, when a verdict is set aside and a trial court grants a new trial because of a question of law or legal inference, then the court's decision is fully reviewable. *Chiltoski v. Drum*, 121 N.C. App. 161, 164, 464 S.E.2d 701, 703 (1995), *disc. review denied*, 343 N.C. 121, 468 S.E.2d 777 (1996); *Cummings v. Snyder*, 91 N.C. App. 565, 568, 372 S.E.2d 724, 725 (1988); *Britt v. Allen*, 291 N.C. 630, 636, 231 S.E.2d 607, 611 (1978). We hold the trial court below erred and that his decision to grant a new trial should be reversed.

The court granted a new trial based on the misapprehension of law that, when a contract does not specifically set forth the dates that payments are to be due, then it is impossible to determine when a breach, if any, occurred. The trial court's statement of the law is inaccurate, and the court's order constitutes reversible error. *Chiltoski*, 121 N.C. App. at 164, 464 S.E.2d at 703. Specificity of payment due dates is not required to show breach of contract for nonpayment. Our courts have held that where no date for payment is specified in the contract, the courts will presume a reasonable time. *International Minerals & Metals Corp. v. Weinstein*, 236 N.C. 558, 561, 73 S.E.2d 472, 474 (1952); *Helms v. Prikopa*, 51 N.C. App. 50, 275 S.E.2d 516 (1981). The contract provided for three monthly installments of Sockwell's fee. The contract provided that the fee was not contingent upon Sockwell locating a director of marketing for SEI. It is apparent that the parties' intention was for monthly payments. However, to the extent necessary to find a breach occurred, the jury could have presumed other reasonable due dates and still found that SEI let these dates pass without making a single payment as they had contracted to

do. By no means did the absence of specific dates make it impossible for the jury to have determined that a breach occurred.

Moreover, the crux of plaintiff's case is predicated on the defendant's nonresponsiveness, preventing the plaintiff from performing its portion of the contract. Under the evidence and instructions to the jury, to which neither party objected, the due dates of the invoices were irrelevant to a finding of breach. Plaintiff submitted to the jury that SEI either wrongfully terminated the contract or prevented Sockwell from performing the contract, entitling Sockwell to partial payment of its fee. Defendant submitted Sockwell had abandoned the project after SEI's circumstances required it to put the project on hold. The court's concern over the lack of payment due dates was erroneous.

[2] Plaintiff also contends the trial court erred in its award of prejudgment interest. N.C. Gen. Stat. § 24-5(a) (1991) provides that "the amount awarded on the contract bears interest from the date of breach." The jury verdict in this case established that there was a breach of the contract and awarded plaintiff damages. Once these facts were established, plaintiff was entitled to interest from the date of the breach as a matter of law. *Thomas M. McInnis & Assoc., Inc. v. Hall*, 318 N.C. 421, 431, 349 S.E.2d 552, 558 (1986). Since the parties did not submit this issue to the jury, it was up to the trial court to determine the date of breach for the prejudgment interest award. *Metromont Materials Corp. v. R.B.R. & S.T.*, 120 N.C. App. 616, 618, 463 S.E.2d 305, 307 (1995), *disc. review denied*, 342 N.C. 895, 467 S.E.2d 903 (1996). While the trial court may select the date which was "the latest one on which breach could have been found" in the present case, the court's selection of ten days prior to the jury's verdict is not supported by the record or the evidence presented at trial. *Taha v. Thompson*, 120 N.C. App. 697, 702-03, 463 S.E.2d 553, 557 (1995) (court approved use of latest breach date possible). Ed Sockwell testified that two monthly invoices for the first two installments of the $33,000 fee had been sent to SEI, that SEI never paid, and that Sockwell terminated its search for SEI's marketing director on 9 May 1994. Sockwell testified that he never heard from SEI after 6 June 1994. Plaintiff submits that 6 June 1994 should be the latest date the court could have selected as the date of breach. We hold that it is within the province of the trial court to set the date of breach. We hold that the trial court must review the evidence presented and select a date of breach. The court is authorized to take additional evidence, if necessary.

PARHAM v. IREDELL COUNTY DEPT. OF SOCIAL SERVICES

[127 N.C. App. 144 (1997)]

In sum, the order of the trial court granting a new trial is reversed, and the case remanded for reinstatement of the verdict, a determination of the date of breach for imposition of prejudgment interest, and entry of judgment for plaintiff.

Reversed and remanded.

Judges MARTIN, Mark D., and TIMMONS-GOODSON concurred in this opinion prior to 31 July 1997.